UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

UNITED STATES,

        Plaintiff,

  -v-                                                                    No.  19 CR 875-LTS

CHRISTOPHER et al.,

        Defendants.

---------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

Defendants Darrius Christopher ("Mr. Christopher") and Robert Wade ("Mr. Wade") move separately to suppress physical and identification evidence or, in the alternative, hold Wade and Franks hearings.[1] (Docket Entry Nos. 48, 52.)

The Court has thoroughly reviewed the submissions of the parties,[2] and, for the following reasons, denies both motions.

## BACKGROUND

The indictment in this matter charges Mr. Christopher and Mr. Wade with possession of ammunition as felons in violation of 18 U.S.C. section 922(g)(1), and conspiring in

---

[1] See U.S. v. Wade, 388 U.S. 218, 242 (1967) (authorizing district courts to hold an evidentiary hearing to determine whether pretrial identification procedures improperly tainted an eye-witness's identification); and Franks v. Delaware, 438 U.S. 154 (1978) (holding that the Fourth Amendment requires an evidentiary hearing upon a defendant's substantial showing that a warrant affidavit contained a material, deliberate falsehood or statement made with reckless disregard for the truth).

[2] The Court has considered Docket Entry Numbers 48, 49, 50, 51, 52, 53, 54, 57, 59, 60, and 64.

violation of 18 U.S.C. section 371 to possess ammunition as felons in violation of 18 U.S.C. section 922(g)(1).  (Docket Entry No. 18.)[3]  These charges arise from an incident that occurred on Oct. 25, 2019, in the Bronx, New York, in which three people were shot.  (Docket Entry No. 57, at 2.)  During the investigation, law enforcement officers collected surveillance video from the vicinity of the shooting.  Video recorded outside of a bodega shortly after the shooting ("the Bodega Video") depicts two individuals walking away from the location of the shooting.  (Docket Entry No. 57, at 3; Exh. A, at ¶ 6.a. n.1.)  In another video recorded from a nearby street shortly before the shooting ("the Street Video"), two individuals dressed in the same clothing as those in the Bodega Video walk towards the location of the shooting.  (Docket Entry No. 57, at 3.)  In the Street Video, one of the individuals ("Individual-1"), removes an object from his left jacket pocket, holds it in his left hand, manipulates it, and replaces it in his left pocket.  (Id.)  The Street Video shows the two individuals walk toward the shooting location, which is obscured by trees, then flashes of light, then bystanders running from that location.  (Id. at 4.)

On November 7, 2019, officers executed a search of Mr. Christopher's residence pursuant to a search warrant.  (Id. at 4.)  Officers seized clothing and a cellphone belonging to Mr. Christopher.  (Id.)  The warrant was issued by a Magistrate Judge based on an "Agent Affidavit in Support of Application for Search and Seizure Warrant."  (Docket Entry No. 54, Ex. E.)  The affidavit described the contents of the Bodega and Street Videos, but did not submit the videos for review by the court.  (Docket Entry No. 54, at 5; id., Exhs. D, E.)  In the affidavit, Detective Robert Locher proffered that, in the Bodega Video, Individual-1 held his hand in his pocket in a way that indicated, "[b]ased on [Locher's] training and experience . . . that Individual-1 has a firearm in his pocket."  (Docket Entry No. 54, Exh. E, at ¶ 6.d.)  Det. Locher

---

[3]     The facts cited herein are drawn from the factual and documentary proffers of Mr. Christopher, Mr. Wade, and the Government.

also stated that "[a]lthough I have not watched [the Street Video] myself, based on reports prepared by another detective involved in this investigation, . . . I have learned that . . . Individual-1 remove[d] what appeared to be a small firearm from his left jacket pocket, rack[ed] it . . . and then place[d] the firearm back into his jacket pocket."  (Id. at ¶ 7.a.)  The other detective involved in the investigation was Det. Toland, whom Det. Locher spoke with on Nov. 6, 2019.  (Docket Entry No. 54, Exh. G (report dated November 13, 2019), at 1.)  Det. Locher also wrote in his report of the conversation that Det. Toland "did show" Det. Locher the Street Video and still photos from that video.  (Id.)  The affidavit that Det. Locher submitted in support of the warrant application also represented that "I have compared video surveillance depicting Individual-1 to law enforcement photographs of the mug shot of "Darrius Christopher" and based on that comparison, I believe . . . that Individual-1 is Darrius Christopher."  (Docket Entry No. 54, Exh. E, at ¶ 8.a.)  The mug shot of Mr. Christopher was not submitted to the court in connection with Det. Locher's affidavit.  Det. Locher's affidavit did not disclose that Mr. Christopher had been identified by an individual ("Tipster") who had seen an image from the Bodega Video on the news.  (Docket Entry No. 54, at 5.)

On January 16, 2020, Mr. Wade was arrested pursuant to an arrest warrant, issued upon a complaint charging him with a violation of 18 U.S.C. section 922(g)(1), to wit, possession of a firearm or ammunition by a felon.  (Docket Entry No. 57, Exh. A, at USAO_000288; Docket Entry No. 50, ("Wade Aff."), at ¶ 3).)  Mr. Wade was arrested after he had exited a vehicle he was driving ("the Wade Vehicle"), leaving his five-year-old daughter in the backseat.  (Wade Aff., at ¶¶ 3-5.)  Mr. Wade did not have a cellphone on his person at the time of arrest.  (Docket Entry No. 64, at 4.)  After the arrest, narcotics investigators entered the Wade Vehicle (Wade Aff., at ¶ 9; Docket Entry No. 64, at 9) and seized a cellphone that was on

the dashboard, two cellphones that were in the driver's side door, and folded pages of paper containing names and numbers that the Government alleges is a ledger of narcotics transactions ("the ledger").  (Docket Entry No. 60, Exh. A; Docket Entry No. 64, Exhs. C, D, E, F.)  The ledger was in the driver's side door compartment, folded so that the writing was on the inside of the pages.  (Docket Entry No. 60, Exh. A; Docket Entry No. 64, Exh E.)

In a meeting with law enforcement personnel, a person referred to in the government's submission as Individual-2 identified a photograph of Mr. Wade as depicting a person known to Individual-2.  (Docket Entry No. 57, at 26.)  Individual-2 had informed law enforcement that they believed they knew one of the people pictured in the Bodega Video, and that the person pictured went by Alias-1.  (Id.)  Later in that conversation, law enforcement showed Individual-2 a single photo of Mr. Wade, which was taken from the law enforcement database and is described by the defense as Mr. Wade's "mug shot."  (Id.; Docket Entry No. 51, at 2.)  Law enforcement asked Individual-2 whether they recognized the person in the photo, and Individual-2 identified the person pictured as Alias-1.  (Docket Entry No. 57, at 27.)

## Discussion

Mr. Christopher's Motion to Suppress Evidence

*Search of Mr. Christopher's Apartment*

The Fourth Amendment to the Constitution of the United States directs that "no Warrants shall issue, but upon probable cause."  U.S. CONST. AMEND. IV.  Mr. Christopher seeks an order suppressing the physical evidence recovered from the search of his apartment and all the fruits thereof, arguing that the search warrant was not supported by a proffer of probable cause.  Probable cause for a search requires information indicating a "fair probability that contraband or

evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "All data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath." U.S. v. Falso, 544 F.3d 110, 122 (2d Cir. 2008) (quoting U.S. v. Gourde, 44 F.3d 1065, 1067 (9th Cir. 2006)). The issuing judicial officer may not rely on conclusory allegations in an affidavit; the warrant application must contain sufficient factual information for the judicial officer to make an independent probable cause determination. US v. Rutherford, 71 F. Supp. 3d 386, 392 (S.D.N.Y. 2014). This Court must give "great deference" to the probable cause determination of the issuing court, Gates, 462 U.S. at 263,[4] and review "whether the issuing judicial officer had a substantial basis for the finding of probable cause." U.S. v. Wagner, 989 F.2d 69, 72 (2d Cir. 1993).

       Mr. Christopher argues that Detective Locher's affidavit does not contain sufficient factual allegations to provide a substantial basis for the conclusion that there was a fair probability that (1) Individual-1 possessed a firearm, and (2) Mr. Christopher was Individual-1. (Docket Entry No. 54, 7-8.)

       The undisputed factual allegations in the affidavit which support the conclusion that Individual-1 possessed a firearm are as follows: Individual-1 and the other person were shown on the Bodega Video walking away from the shooting location minutes after the shooting occurred (Docket Entry No. 57, at Exh. A, at ¶ 6.a n.1); Individual-1 had his hand in his left pocket and, based on the manner in which he kept his hand within the jacket, Det. Locher believed Individual-1 was holding a firearm (id. at ¶ 6.d); and Det. Toland's report stated that the Street Video showed Individual-1 remove "what appeared to be a small firearm from his left jacket pocket, [and] rack it" near the shooting location, moments before the shooting. (Id. at ¶

---

[4]    See also U.S. v. Clark, 638 F.3d 89, 93 (2d Cir. 2011) (requiring "considerable deference" to the prior court's determination).

7.a.)  The sole factual allegation which supports the conclusion that Mr. Christopher is Individual-1 was that Det. Locher had compared Mr. Christopher's mug shot to the surveillance video and "believe[d] that Individual-1 is Darrius Christopher."  (Docket Entry No. 57, Exh. A, at ¶ 8.a.)

Mr. Christopher argues that Detective Toland's statement that the Street Video showed Individual-1 rack a small firearm was hearsay which lacked indicia of reliability sufficient to support a probable cause determination.  (Docket Entry No. 54, at 9.)  A judicial officer may consider hearsay in determining probable cause if there is a substantial basis to credit the hearsay statement.  Gates, 462 U.S. at 245.  Mr. Christopher argues that the identity of the declarant is required to establish a substantial basis for crediting a hearsay statement.  However, as Mr. Christopher concedes, the "observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number."  U.S. v. Ventresca, 380 U.S. 102, 111 (1965).  Where a declarant is an officer, their reliability rests not upon their personal identity but upon their position as an officer.  Here, the declarant was another detective involved in the investigation.  (Docket Entry No. 54, Exh. E, at 7.a.)  Accordingly, the report by Det. Toland is "plainly a reliable basis" for the warrant. Ventresca, 380 U.S. at 111.

Mr. Christopher also asserts that, in order for a hearsay statement to be sufficiently reliable, the declarant must be available to the judicial officer to clarify the factual basis of a conclusory hearsay statement.  (Docket Entry No. 59, at 2-3.)  In support of his argument, Mr. Christopher cites U.S. v. Genin, 594 F. Supp. 2d 412 (S.D.N.Y. 2009), aff'd, 524 Fed. App'x 737 (2d Cir. 2013).  In Genin, the court considered whether an application for a search warrant contained a substantial basis for probable cause to believe that the target's

computer contained videos of child pornography.  Id. at 418.  The affidavit did not "provide any description of . . . the particular videos" and "merely state[d]: 'According to the summary [prepared by an unnamed IIU analyst], . . . the videos contained child pornography.'"  (Id. at 423.)  The Genin court held that the analyst's summary could not provide a substantial basis for probable cause because the analyst's description of the video's contents as "child pornography" covered multiple potential statutorily-defined categories of sexually explicit conduct, one of "which 'call[ed] into the play [the] imprecise value judgments' of the unnamed IIU analyst who determined that the videos depicted lascivious exhibition" of children.  Id.  The affidavit's ambiguity as to whether the videos satisfied the legal definition of child pornography was compounded, the court said, by the unavailability of the IIU analyst to clarify that "key legal determination."  Id. at n.7.

Here, Det. Toland's assertion that the Street Video showed that Individual-1 held a firearm is a description of the video's contents, not a conclusion applying a value-laden legal categorization to those contents.  Unlike the analyst's summary in Genin, Det. Toland's statement did not fail to "provide any description" of the video or draw a legal conclusion from that description.  Genin, 594 F. Supp. 2d at 423.  Instead, Det. Toland described the object in the Street Video as a small firearm, the apparent "rack[ing]" of that firearm, and the placement of that firearm in Individual-1's pocket.  (Docket Enty No. 54, Exh. E, at 7.a.)  Judge Gorenstein was not required to personally examine every piece of evidence gathered by the investigating officers, see U.S. v. Awadallah, 349 F.3d 42, 67 (2d Cir. 2003) ("An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation"); he was entitled to rely on Det. Locher's and Toland's descriptions of the evidence.  Accordingly,

the affidavit contains a substantial basis for Judge Gorenstein's determination that there was probable cause to believe that Individual-1 possessed a firearm.

For substantially the same reasons, Judge Gorenstein was also entitled to rely upon Det. Locher's factual assertion that Individual-1's appearance matched Mr. Christopher's photo.[5]  The magistrate is required to assess whether the facts gathered in support of the warrant application combined to give rise to the inference of probable cause.  See Aguilar v. Texas, 378 U.S. 108, 111 (1963) (the Fourth Amendment requires that "those inferences be drawn by a neutral and detached magistrate").  The magistrate's assessment of probable cause "cannot be a mere ratification of the bare conclusions of others," as such an assessment would abdicate the role prescribed by the Fourth Amendment.  Gates, 462 U.S. at 239.  Mr. Christopher rightly concedes that Judge Gorenstein did not abdicate his responsibility to determine probable cause in this case (Docket Entry No. 54, at 12, n.3), as the magistrate is not required to examine each piece of evidence and draw every factual conclusion for himself.  Awadallah, 349 F.3d at 67. Det. Locher's statement that he had compared the surveillance video to Mr. Christopher's photo and believed they showed the same person provides a substantial basis for the conclusion that there was a fair probability that Mr. Christopher was Individual-1.

Accordingly, the affidavit's factual allegations provide a substantial basis for Judge Gorenstein's determination that there was a fair probability that Mr. Christopher possessed a firearm on the night of the shooting.  Judge Gorenstein made his determination on the basis of proffers showing that that there was a video that could be interpreted to show that Individual-1

---

[5]  Mr. Christopher concedes that the affidavit's failure to identify why Det. Locher compared Mr. Christopher's photo to the Bodega Video is irrelevant to the sufficiency of the affidavit's demonstration of probable cause because all the data supporting probable cause must be contained within the four corners of the affidavit.  Falso, 544 F.3d at 122. (Docket Entry No. 54, at 9.)

had racked a firearm, that there was a video showing that Individual-1 walked away from the shooting scene with his hand in his pocket in a way that could be interpreted to be consistent with holding a firearm, and that a visual comparison of the video to Mr. Christopher's photo identified Mr. Christopher as Individual-1.  These factual allegations are a substantial basis for Judge Gorenstein's probable cause determination.  Accordingly, Mr. Christopher's motion to suppress the physical evidence recovered from his apartment is denied.

*Mr. Christopher's Request for a* Franks *Hearing*

Contending that Det. Lochner's warrant affidavit was materially false in that it made a representation that that Det. Lochner had not viewed the Street Video and that it omitted the material fact that a tipster had identified Mr. Wade's photograph, Mr. Christopher argues that a Franks hearing is necessary to determine whether Judge Gorenstein was intentionally or recklessly mislead in making his probable cause determination.  To establish entitlement to a Franks hearing, a defendant must make a "substantial preliminary showing," Falso, 544 F.3d at 125, that "there were intentional and material misrepresentations or omissions in the affidavit" supporting the search warrant.  Awadallah, 349 F.3d at 64.  "The burden to obtain [a Franks] hearing is a heavy one, and such hearings are exceedingly rare."  U.S. v. Melendez, No. 16-CR-33 (LTS), 2016 WL 4098556, at *7 (S.D.N.Y. July 28, 2016).  To determine whether a misrepresentation is material, the Court "must set[] aside the falsehoods in the application, and determine [w]hether the untainted portions [of the application] suffice to support a probable cause . . . finding."  U.S. v. Lambus, 897 F.3d 368, 397 (2d Cir. 2018) (citing U.S. v. Rajaratnam, 719 F.3d 139, 146 (2d Cir. 2013)) (internal citations omitted).

Mr. Christopher argues first that Det. Locher's statement that he had "not watched th[e Street V]ideo" was a deliberate falsehood. (Docket Entry No. 54, Exh. E, at ¶ 7.a.) Det. Locher's affidavit also stated that, "based on reports prepared by another officer," he learned that the Street Video showed Individual-1 "remove what appeared to be a small firearm from his left jacket pocket, rack it . . . and then place the firearm back into his jacket pocket." (Id.) Mr. Christopher proffers a later report, authored by Det. Locher on November 13, 2019, which states that, at 11:50 a.m. on November 6, 2020, Det. Locher spoke with Det. Toland, Det. Toland described the Street Video to Det. Locher, Det. Toland showed Det. Locher the Street Video and still photos from that video, and Det. Locher identified Christopher. (Docket Entry No. 54, Exh. G.) Det. Locher's affidavit was submitted to the Court on November 6, 2019, the date of Det. Locher's conversation with Det. Toland. (Docket Entry No. 54, Exh. A, at 1.) Accordingly, Mr. Christopher has made a substantial preliminary showing that Det. Locher had viewed the Street Video at the time he submitted his affidavit to Judge Gorenstein. Construing this discrepancy as a falsehood in the affidavit for the purposes of this analysis, the Court must next determine whether the falsehood was material. See Lambus, 897 F.3d at 397. To do so, the Court sets aside the allegedly false statement and determines whether the untainted portions of the affidavit suffice to sustain probable cause. Here, they do suffice. Judge Gorenstein was entitled to rely upon the hearsay description of the Street Video contained in the affidavit,[6] even where other evidence was available to the officers involved. Accordingly, the statement that Det. Locher had not viewed the Street Video, even if false, was not material to the probable cause determination.

Mr. Christopher next argues that Det. Locher omitted the fact that an anonymous tipster had identified Mr. Christopher. (Docket Entry No. 54, at 12-13.) Mr. Christopher argues

---

[6] See discussion concerning hearsay, supra; Awadallah, 349 F.3d at 67.

this omission was material to the probable cause determination because Judge Gorenstein would have been required to determine the tip's reliability had it been proffered in Det. Locher's affidavit.  The ultimate Franks inquiry for omissions is whether, after correcting the omission, "there remains a residue of independent and lawful information sufficient to support [a finding of] probable cause . . . ."  Rajaratnam, 719 F.3d at 146 (citation omitted); see also U.S. v. Miller, 116 F.3d 641, 664 (2d Cir. 1997) ("A challenge to the veracity of such an affidavit will succeed only when it establishes intentional or reckless omissions . . . that are 'necessary to the finding of probable cause' . . . .")⁷  The tip was clearly relevant to Det. Locher's investigation of Individual-1's identity.  However, a Franks hearing is only warranted if the tip's "omission [wa]s material – i.e., '[w]hether the untainted portions [of the affidavit] suffice to support a probable cause . . . finding.'"  Rajaratnam, 719 F.3d at 153 (quoting U.S. v. Canfield, 212 F.3d 713, 717 (2d Cir. 2000)).

        The tip was not material to Judge Gorenstein's probable cause determination because, even if information revealing the tip were added to Det. Locher's affidavit, there still exists a "residue of [untainted,] independent and lawful information" supporting probable cause.

---

[7]    Although omissions "are governed by the same rules" as misstatements, *United States v. Ferguson,* 758 F.2d 843, 848 (2d Cir.1985), "the literal *Franks* approach [does not] seem[] adequate because, by their nature, omissions cannot be deleted"; therefore "[a] better approach ... would be to ... insert the omitted truths revealed at the suppression hearing," *United States v. Ippolito,* 774 F.2d 1482, 1487 n. 1 (9th Cir.1985). Accordingly, we have held that "[t]he ultimate inquiry is whether, after putting aside erroneous information and [correcting] material omissions, there remains a residue of independent and lawful information sufficient to support [a finding of] probable cause [or necessity]." *Canfield,* 212 F.3d at 718 (internal quotation marks omitted); *see also United States v. Martin,* 615 F.2d 318, 328 (5th Cir.1980) ("[W]e [are] required to determine whether, if the omitted material had been included in the affidavit, the affidavit would still establish probable cause [or necessity].... If it would not, we would be required to void the warrant and suppress the evidence seized pursuant to it.")

United States v. Rajaratnam, 719 F.3d 139, 146 (2d Cir. 2013)

Det. Locher's proffer as to comparison of the photo to the video and his resulting belief that they depicted the same person was sufficient to establish a fair probability that Mr. Christopher was the person who held the firearm.  Mr. Christopher argues that but for the tip, Det. Locher would not have compared Mr. Christopher's photo to the video.  (Docket Entry No. 59, at 6.)  Regardless of whether the tip was the reason Det. Locher made the comparison, there is nothing in the record (much less in the affidavit) to controvert his proffer of his belief that they showed the same person, based on his personal knowledge of his visual comparison of the two.[8]  Accordingly, Det. Locher's comparison was a basis of identification that did not rely on the accuracy of the tip.  Mr. Christopher's argument to the contrary asserts that Det. Locher could not have believed that Mr. Christopher was pictured in the video without the tipster's identification of Mr. Christopher.  (Docket Entry No. 59, at 6.)[9]  This argument necessarily assumes that Det. Locher's statement that he identified Mr. Christopher by comparing the photo to the Bodega Video was false.  Mr. Christopher has not made a substantial showing that Det. Locher could not identify Mr. Christopher by comparing the photo and the Bodega Video, and instead asks this Court to speculate that the tip was a necessary basis for Det. Locher's belief that the two appeared to show the same person.  Accordingly, Mr. Christopher has not made a substantial showing that Det. Locher's comparison depended upon the tip for its identification.

---

[8]     Whether Det. Locher's comparison would not have taken place "but for" the tip is not the causation inquiry relevant to the question of whether "there remains a residue of independent" information in the affidavit to support probable cause.

[9]     Mr. Christopher invites the court to correct the omission by augmenting the text of the affidavit to identify the tipster's information as a basis for Det. Locher's conclusion that there was a fair probability that Mr. Christopher was the person in the video.  (Docket Entry No. 59, at 6.)  While the tip, if determined reliable, could have provided additional data supporting the probable cause finding, Illinois v. Gates, 462 U.S. 213 (1983) (holding that a tip from an anonymous informant can be a basis for a finding of probable cause), its relevance to the identity of Individual-1 does not necessitate a conclusion that Det. Locher could not credibly have believed that the video and the photo depicted the same person based on visual comparison alone.

Mr. Christopher's motion for a Franks hearing is therefore denied.

Mr. Wade's Motion to Suppress

*Search of the Wade Vehicle*

Mr. Wade seeks to suppress physical evidence recovered from the Wade Vehicle, specifically the alleged ledger and the three cellphones.  (Docket Entry No. 51, at 3.)  Because there is no dispute that these items were seized pursuant to a warrantless search of the Wade Vehicle (Docket Entry No. 57, at 5), the Government must show by a preponderance of the evidence that an exception to the Fourth Amendment's warrant requirement applied.  See U.S. v. Bayless, 921 F. Supp. 211, 213 (S.D.N.Y. 1996).

"[C]ircumstances unique to the vehicle context justify a search incident to arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'"  Arizona v. Gant, 556 U.S. 332, 343 (2009) (citing Thornton v. U.S., 541 U.S. 615, 632 (2004)).  Much as in an assessment of probable cause, a court must view the circumstances which allegedly support the belief that a vehicle contains evidence relevant to the crime of arrest "through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training," U.S. v. Price, 599 F.2d 494, 501 (2d Cir. 1979), taking into account the fact that an officer's training may allow the officer to form a reasonable belief "from facts and circumstances where a layman may not." U.S. v. Babilonia, 854 F.3d 163, 178 (2d Cir. 2017) (quotation omitted).  Where such a reasonable belief exists, "an automobile may be searched incident to the arrest of an occupant even after the arrestee has been secured and cannot access the interior of the vehicle." U.S. v. Gonzalez, 441 Fed. App'x 31, 34 (2d Cir. 2011).  Furthermore, if an object is in "plain view" during a lawful search and the officer has a lawful

right of access to the object, the officer may seize it without a warrant so long as its incriminating nature is readily apparent. See Minnesota v. Dickerson, 508 U.S. 366, 375 (1993); cf. Arizona v. Hicks, 480 U.S. 321, 325 (1987) (picking up an allegedly stolen stereo to record its serial number during the search of an apartment for a shooter did not satisfy the plain view doctrine because it was "unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, [which] produce[d] a new invasion of . . . privacy.")

The Government has proffered the following facts as they appeared to the officers who searched the Wade Vehicle: a warrant to arrest Mr. Wade had been issued, the arrest warrant was for possession of a firearm or ammunition, Mr. Wade had previously been convicted of a felony, Mr. Wade did not have a cellphone, firearm, or ammunition on his person at the time of his arrest, and his five-year-old daughter was alone in the vehicle after his arrest. The Government has also proffered that it was reasonable for a trained officer to believe that a convicted felon who possessed a firearm may carry it with him. The combination of these facts provided a basis for a reasonable belief that firearms or ammunition would be located in the passenger compartment of the Wade Vehicle, within reach of a young child who was unsupervised. Officers are permitted to conduct protective searches of areas in which danger may be located, including the passenger compartments of automobiles. See Michigan v. Long, 463 U.S. 1032 (1983) (officers may search a vehicle's passenger compartment when they have reasonable suspicion any individual is dangerous and might have access to a weapon); Maryland v. Buie, 494 U.S. 325 (1990) (incident to arrest, an officer may conduct a protective sweep of the areas of a house in which he reasonably suspects a dangerous person may be hiding). Upon the facts known to the officers at the scene, it was reasonable to believe that Mr. Wade's daughter

was within reach of a firearm and may have posed a danger to herself or others.  Accordingly, the officers were permitted to search the Wade Vehicle for evidence of the crime of arrest and, separately, to protect the safety of all involved.

Once inside the Wade Vehicle, the officers were in a lawful position to see the cellphones located in plain view on the dashboard and in the driver's side door.  (Docket Entry No. 64, Exhs. C, D.)  The evidentiary nature of the three cellphones was immediately apparent, as officers have learned, based on their training and experience, that individuals involved in criminal activity often store information related to those activities in their cellphones.  Docket Entry No. 57, Exh. B, at ¶ 8.c.; see Babilonia, 854 F.3d at 178.  Mr. Wade has not alleged that the officers searched the contents of the cellphones without a warrant, merely that they seized them during the course of their search of the vehicle.  Accordingly, because the officers lawfully accessed the interior of the Wade Vehicle, they also lawfully seized the cellphones.  See Dickerson, 508 U.S. at 375 ("if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant").

Similarly, the officers were engaged in a lawful search of the Wade Vehicle for firearms and ammunition when they removed the ledger from the driver's side door.  The officers were entitled to open the folded pages of the ledger as a part of the search for ammunition, at which point the writing on the ledger came into plain view.  The writing on the ledger, which contained names and numbers, appeared to the "trained DEA and narcotics investigators who saw them" to be evidence of narcotics trafficking.  (Docket Entry No. 64, at 10.)  Mr. Wade does not argue otherwise.  Accordingly, because the officers were in a lawful

position from which to view the writing on the ledger and the incriminating character was immediately apparent to those officers, they were permitted to seize the ledger without a warrant.

For the reasons stated above, Mr. Wade's motion to suppress the ledger and cellphones as the fruits of an unlawful search is denied.

*Pretrial Identification of Mr. Wade*

Mr. Wade requests suppression of all evidence arising from a pretrial identification procedure consisting of officers presenting Individual-2 with a single photo of Mr. Wade and asking Individual-2 if he recognized the person pictured. Alternatively, Mr. Wade requests that the Court hold an evidentiary hearing to establish the reliability of the pretrial identification pursuant to U.S v. Wade, 388 U.S. 218 (1967).

Only when evidence "is so extremely unfair that its admission violates fundamental conceptions of justice" does the Due Process clause of the Fourteenth Amendment prohibit the use of that evidence at trial. Dowling v. U.S., 493 U.S. 342, 352 (1990). Where a witness identifies the defendant in a police-organized photo array, the identification only violates fundamental fairness where the procedure "was so [unnecessarily] suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Perry v. New Hampshire, 565 U.S. 228, 238 (2012) (quoting Simmons v. U.S., 390 U.S. 377, 384-85 (1969)). Presentation of a single suspect to a witness is an inherently suggestive procedure. See Brisco v. Ercole, 565 F.3d 80, 88 (2d Cir. 2009). However, a "claimed violation of Due Process in the conduct of a confrontation depends on the totality of the circumstances surrounding it." Id.; Neil v. Biggers, 409 U.S. 188, 198 (1972) ("the admission of evidence of a showup without more does not violate due process.") Therefore, to warrant suppression, a single photo identification procedure must

be "unnecessarily suggestive" in light of the factual circumstances under which it was presented to the witness.  Id.  Accordingly, courts employ a two-part test to determine whether an identification procedure violates Due Process.  First, the Court must examine whether the identification procedure was unnecessarily suggestive under the circumstances.  Second, the Court must weigh that suggestiveness against other factors which might demonstrate that the identification is nonetheless "independently reliable."  Id. at 89; see also U.S. v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir. 1990).  If a defendant makes a "sufficient pretrial showing of impropriety" in the identification procedure, then suppression rather than cross examination is the proper method of ensuring the reliability of the evidence.  See U.S. v. Salomon-Mendez, 992 F. Supp. 2d 340, 242 (S.D.N.Y. 2014).

       Mr. Wade argues that the display of his mug shot to Individual-2 was unnecessarily suggestive because a single photo display informs the witness that the police already know who the suspect is based on other information, and because a mug shot sends the message that the police already have a picture of the suspect from other crimes he has committed.  (Docket Entry No. 51, at 7.)  In Defendant's opening brief, counsel argued that the Government had not disclosed the circumstances surrounding the identification procedure, or whether the reliability of the identification was supported by any independent factors.  (Id.)  In its response, the Government proffered contextual information, asserting that Individual-2 told law enforcement that they thought they knew someone shown in the Bodega Video, and that the person they recognized went by Alias-1.  (Docket Entry No. 57, at 26.)  The Government further stated that law enforcement officers showed Individual-2 the picture of Mr. Wade, asked if they knew the person pictured, and Individual-2 then identified Mr. Wade as the person who went by

Alias-1.  (Id. at 26-27.)  Mr. Wade's counsel did not reply to the Government's proffer and argument.

As previously noted, single photo displays are inherently suggestive.  See Wiggins v. Greiner, 132 Fed. App'x 861, 865 (2d Cir. 2005) (courts have "consistently condemned the exhibition of a single photograph as a suggestive practice.")  However, given the Government's uncontroverted proffer that Individual-2 was independently familiar with the person known as Alias-1, there is an independent basis for the reliability of Individual-2's identification of Mr. Wade as the person who went by Alias-1.  Accordingly, the defense has not made a sufficient showing that there was a substantial likelihood of a mistaken identification.  The facts provided in the Government's response can be tested during cross-examination.  Mr. Wade's motion to suppress the identification or, in the alternative, to hold a Wade hearing to determine the reliability of the identification, is denied.

CONCLUSION

For the foregoing reasons, the Defendants' motions to suppress evidence are denied in their entirety.

Docket Entry Numbers 48 and 52 are resolved.

SO ORDERED.

Dated: New York, New York
       September 13, 2020

   /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge