**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | **19 Cr. 875 (SHS)** |
| **DARRIUS CHRISTOPHER** | |
| **Defendant** | |

**DEFENDANT CHRISTOPHER'S PROPOSED VOIR DIRE**

SULLIVAN|BRILL, LLP
Attorneys for Darrius Christopher

By: Steven Brill

115 Broadway, 17th Floor
New York, NY 10006
212-566-1028
Steven.Brill@sullivanbrill.com

*October 22, 2021*

**PRELIMINARY STATEMENT**

Mr. Christopher respectfully requests, pursuant to Federal Rule of Criminal Procedure 24(a), that the Court consider the following matters and include the attached questions in its voir dire to ensure Mr. Christopher ability to effectively exercise his challenges for cause and peremptory challenges.

*OPEN ENDED QUESTIONS*

Mr. Christopher respectfully requests that the Court ask potential jurors some open- ended questions that call for narrative responses. Because the expected answers to close-ended questions are often obvious, the answers are often meaningless. Additionally, one of the dangers of closed-ended questions is the unlikelihood that a prejudiced juror will proclaim prejudice in open court. If challenges for cause and peremptory challenges are not to be empty rights, there must be "sufficient inquiry into the background and attitudes of the jurors." *United States. v.Dellinger*, 472 F.2d 340, 368 (7th Cir. 1972).    The Supreme Court has recognized that "the juror's assurances that he is equal to [the] task cannot be dispositive." *Murphy v. Florida*, 421 U.S. 794, 800 (1975); *see also Smith v. Phillips*, 455 U.S. 209, 221-22 (1982) (O'Connor, J., concurring) ("Determining whether a juror is biased or has prejudged a case is difficult, partly because the juror may have had an interest in concealing his own bias and partly because the juror may be unaware of it."); *United States v. Denno*, 313 F.2d 364, 372 (2d Cir.) (en banc), ("[M]erely going through the form of obtaining jurors' assurances of impartiality is insufficient."). Through asking open-ended questions and eliciting narrative responses, the Court and the parties will be more likely to learn about any misunderstanding, prejudice, or bias among potential jurors that is inconsistent with their requisite impartiality.

*ATTORNEY-CONDUCTED VOIR DIRE*

Mr. Christopher respectfully requests that the Court permit each side thirty minutes of attorney-conducted voir dire as a complement and addition to the Court's voir dire. Federal Rule of Criminal Procedure 24(a)(1) explicitly allows the Court to permit attorney-conducted voir dire. Attorney-conducted voir dire most effectively advances the goal of obtaining an impartial jury, both through the informed, non-discriminatory exercise of peremptory challenges by counsel and to allow the Court full and informed consideration of any challenge for cause.

Jurors are more likely to be truthful and forthcoming when questioned by attorneys than when questioned by the Court alone—prospective jurors are more likely to provide the Court with the "correct" answer due to Your Honor's role in the proceeding.[1] In *United States v. Jarrod Little*, 16-CR-75 (E.D.N.Y. 2017), the court granted the parties' request to conduct 30 minutes of voir dire each.    In that case, at least one juror answered in the affirmative to the court's question about understanding the defendant's right not to testify, but upon further questioning by the defense attorney, admitted a problem with that principle and was dismissed. This Court should follow suit and grant attorney-conducted voir dire.

*IMPLICIT BIAS*

Mr. Christopher respectfully requests that the Court question and instruct the jury about implicit bias. The prevalence of implicit bias across a range of decision-making processes

---

[1] *See S. E. Jones, Judge- Versus Attorney-Conducted Voir Dire - An Empirical Investigation of Juror Candor*, 11.2 Law & Human Behavior 131-146 (1987), available at https://www.ojp.gov/ncjrs/virtual-library/abstracts/judge-versus-attorney-conducted-voir-dire-empirical-investigation-0.

has been well-documented in scientific literature and has spurred extensive efforts to diminish the impact of implicit bias in the courtroom. [2] Research has shown that awareness of implicit bias is the first step toward correcting for that bias. [3] To mitigate the potential harm of implicit bias among jurors, the United States District Court for the Western District of Washington created an educational video that its judges show during jury selection in every case. The ten-minute video is available at https://www.wawd.uscourts.gov/jury/unconscious-bias. In a recent Eastern District case, Judge Bloom ordered that the video be played during jury selection, noting that the video's creation "was the result of a considered process by the bar and bench." *United States v. Anthony Lawrence*, No. 18-CR-527 (JBW), ECF No. 58. Judge Weinstein subsequently affirmed the order and recommended that interested judges consider the video. *See id.* at ECF No. 72.1. We respectfully request that the Court play the video for the venire in this case. [4]

In addition, in a recent trial, the Honorable Judge Lorna G. Schofield from the SDNY instructed the jury during the voir dire portion of the trial in the following way:

*"Everyone -- including me -- has feelings, assumptions, perceptions, fears, sympathies, generalizations, prejudices and stereotypes that we may not be aware of. These are called*

---

[2] *See American Bar Association, Achieving an Impartial Jury Toolbox*, available at https://www.americanbar.org/content/dam/aba/publications/criminaljustice/voirdire_toolchest.authcheckdam.pdf.

[3] Pamela Casey, et al., *Addressing Implicit Bias in the Courts*, 49 Ct. Rev. 64 (2013), available at https://core.ac.uk/download/pdf/215161404.pdf.

[4] We note that the Court's website contains the following statement: "This video is the property of the United States District Court, Western District of Washington. It may not be rebroadcast or otherwise used without the Court's written consent. For permission to use the video please send a written request to Patrick Sherwood, Deputy in Charge at patrick_sherwood@wawd.uscourts.gov."

*"implicit biases." These biases may concern race, gender, national origin, sexual orientation, class, education, and many other issues. These hidden thoughts can impact what we see and hear, how we remember what we see and hear and how we make important decisions. Because you are making very important decisions in this case, I strongly encourage you to evaluate the evidence or lack of evidence carefully and to resist jumping to conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or biases. The law demands that you return a just verdict, based solely on the evidence, your individual evaluation of that evidence, your reason and common sense and these instructions. Our system of justice is counting on you to render a fair decision based on the evidence, not on biases."* United States v. Shoendale Jarrett, 19 Cr. 670-01 (LGS).

We respectfully request that this Court instruct the jury in our case in using the same fashion.

_____

**QUESTIONS REGARDING PRESUMPTION OF INNOCENCE AND BURDEN OF PROOF**

1. When you hear that someone has a criminal record, what is your immediate reaction?

2. Every person charged with a crime is presumed innocent of that crime until proven guilty beyond a reasonable doubt. This does not change because someone has been found guilty of a prior crime. You will hear that Mr. Christopher was previously found guilty of a crime punishable by more than one year. Will you have difficulty presuming that Mr. Christopher is innocent because he has a previous conviction?

**QUESTIONS REGARDING LAW ENFORCEMENT/CRIMINAL JUSTICE SYSTEM**

1. Do you personally know any current or former police officers, probation officers, correction officers, or parole officers? If so, how?

2. What is your general opinion of law enforcement officers? What is this opinion based on?

3. What have your interactions with law enforcement officers been like?

4. How do you feel about the criminal justice system?

5. Do you have any negative feelings towards the legal system, prosecutors, defense lawyers, or the process generally?

6. Would you believe a police officer or federal agent's word over that of other non-police witnesses?

**QUESTIONS SPECFIC TO THE CASE: JUROR'S EXPERIENCE WITH AMMUNITION/FIREARMS**

1. The charges in this case involve the possession of ammunition and there will be testimony regarding a shooting. Firearms are a topic about which people often have strong feelings. Is there anything about this charge that could impact your ability to be fair and impartial in this case, even if you could be fair and impartial in a different type of case?

2. When you first heard what this case was about, what were your initial thoughts?

3. Are you a member of a group that advocates about issues related to guns or gun control? If so, which group?

    4.       Do you or does anyone close to you own a gun? Have you ever handled or shot a gun?

    5.       Have you, or any friend or family member, been the victim of a gun-related crime? (If any venire member says yes, defense counsel requests that the Court bring the potential juror to sidebar for follow-up questions regarding the details of these crimes, whether the perpetrators were found and convicted, whether these crimes would prevent him or her from presuming Mr. Christopher to be innocent, and whether he or she can assure the Court without hesitation or equivocation that he or she will be able to render a verdict without bias or prejudice.)

**QUESTIONS REGARDING A DEFENDANT'S RIGHT NOT TO TESTIFY**

1. Under our law, the defendant does not have to testify.   What are your thoughts about a defendant who chooses not to testify in his own defense?

2. Do you think that defendants who do NOT testify in their own defense are probably guilty or have something to hide?

3. Would you expect someone charged with a crime would naturally want to tell his side of the story?

4. Could you find a defendant not guilty of the crimes charged if he does not take the stand and tell you his side of the story?

**QUESTIONS REGARDING A JUROR'S PERSONAL LIFE**

1. Where do you get your news?

2. What newspapers or websites to you read for news?

3. What shows do you watch?

4. What was the last movie you saw?

5. Who are the three people you admire the most? Who are the three people you admire the least?

6. Is there any reason at all that you can think of that would make it difficult in any way for you to serve as a juror in this case, or that makes you reluctant to serve?

**RESPECTFULLY SUBMITTED**

DATED:   NEW YORK, NEW YORK
         October 22, 2021

                                                 Respectfully submitted,

                                                 SULLIVAN|BRILL, LLP

                                               By: Steven Brill, Esq.